506 So.2d 546 (1987)
STATE of Louisiana
v.
Gary TATE
No. 86 KA 0815.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Rehearing Denied May 6, 1987.
*548 Duncan Kemp, III, Dist. Atty., Amite, for plaintiff-appellee.
Joseph H. Simpson, Richard Schwartz, Amite, Lawrence Blake Jones, New Orleans, for defendant-appellant.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
Defendant, Gary Tate, has appealed his conviction of aggravated crime against nature and subsequent sentence of fifteen years of imprisonment. We affirm.
Gary Tate was charged by bill of information with aggravated crime against nature in violation of LSA-R.S. 14:89.1. Defendant pled not guilty and, following trial by jury, was convicted as charged. The trial court sentenced defendant to a fifteen year term of imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. Defendant brings this appeal, urging four assignments of error:
1. The trial court erred by denying defendant's motion for mistrial based on a police officer's testimony in regard to another crime.
2. The verdict is contrary to the law and the evidence.
3. The sentence is disproportionate to the offense.
4. There was an omission in the jury charge relating to the mandatory nature of the sentence.
Assignment of error number four was not briefed on appeal and is, therefore, considered abandoned. Uniform Rules Courts of Appeal Rule 2-12.4.
The victim, a resident of Metairie, testified that she left her apartment at about 7:30 a.m. on January 30, 1983, and went to Southsides, a bar in New Orleans, to pick up her roommate. Upon her arrival, she was told that her roommate was not there. The victim testified that at about 8:30 to 9:00 a.m., she left Southsides, intending to walk to Geno's Speakeasy, a distance of about two buildings from Southsides, in continuance of her search for her roommate. To reach Geno's, the victim had to walk across a parking lot. When she got to the end of the parking lot, she observed defendant inside a car. Defendant opened the car door, grabbed the victim by her wrist, pulled her inside and placed her between himself and the driver, a black male. They proceeded on I-10 in a westerly direction and then on I-55. The victim did not know where she was being taken until she saw a sign indicating Tangipahoa. The victim testified that she struggled; but defendant, *549 whom she estimated to be about 5'8" and one hundred eighty pounds, was simply too strong for her. She testified that she is 5'4" and weighs one hundred eighteen pounds. Along the way to Tangipahoa, she cried and pleaded with the two men, asking that they allow her to get out of the car and promising not to disclose to anyone what had happened.
The victim testified that, at about 11:00 a.m. (about two hours after she was forced into the car), the driver stopped the car at a house. Defendant pulled her out of the car by her wrist. The driver then drove away. She was unable to pull herself from defendant's grasp as he pulled her into the house and into a room. The victim testified that defendant undid his pants, grabbed her by the hair, pushed her head down and put his penis inside her mouth. Defendant continued doing this for an hour despite the victim's constant choking and gagging. Everytime she managed to place some distance between herself and defendant in order to breathe, he hit her in the head and pushed her back onto him. She testified that defendant hit her on the face near the eye, grabbed her arms, inflicted marks to her chest and struck her countless times in the head. She testified that he inflicted numerous "bumps all over [her] head," although she never obtained medical attention as a result of the episode.
She further testified that defendant struck her so many times in the head that she urinated in her pants and begged him to let her go into the bathroom to clean herself. For the first time, defendant took his hands off her to allow her to go inside the bathroom. With this exception, defendant kept his hands on her at all times. She still, however, was not allowed out of defendant's view. While in the bathroom, she noticed an open window. She looked outside and saw a black man standing near the house. She started screaming at the man and pleaded with him to call the police, telling him a man was trying to kill her. At that point, defendant grabbed her around the neck and pulled her away from the window. He told the black man that the victim was crazy and she did not mean what she was saying. The victim testified that the black man walked away and never called the police.
The victim further testified that, at that juncture, she decided that the only way she might remain alive was to start talking to defendant in a "regular sort of voice" and try to obtain some information that she might later use when she called the police. She kept pleading with defendant that he let her go, and he kept saying he was going to take her home. She asked him what was his name; and he replied, "Gary." He displayed his drivers' license to her. She memorized the drivers' license number and later gave it to the police. She also wrote defendant's name and address on a piece of paper in his presence.
The victim testified that the sexual episode itself lasted about an hour. However, she remained at defendant's house a couple of hours before he drove her back to New Orleans in a pickup truck. She testified that defendant stopped for gas along the way and that there were other people at the gas station. She did not scream, because defendant had threatened her, although he was unarmed. She further testified that she was returned to her home by defendant at about 4:00 p.m. on the day in question and called police later that day at about 10:00 p.m.
The record reflects that detective George Heath of the Jefferson Parish Sheriff's Office investigated the victim's complaint. Then, on the day after the offense and in Heath's presence, Don Carson, a technician with the sheriff's office, took photographs depicting portions of the victim's body. The state introduced S-1 into evidence, consisting of eight of the photographs. We note that the photographs depict what appear to be reddened areas, abrasions and/or contusions to the left and right side of the face, chest area, right shoulder, arms, hands, knees and legs of the victim.
The only evidence introduced on defendant's behalf consisted of the testimony of Leonard Alexander, a personal friend of defendant. Alexander testified that he gave the victim a ride from a bar in New Orleans to defendant's house. He testified *550 that he knew the victim since meeting her at a bar when he saw her playing a video machine with defendant. He testified that she was jumping, hugging and kissing defendant.
Contrary to Alexander's testimony, the victim testified that she had never met Alexander or defendant prior to her abduction in the parking lot. She specifically denied ever playing a video game with defendant and ever seeing either of the men in a bar.
Alexander further testified that he, defendant and the victim left the bar together. He got into the car on the driver's side; and the victim pushed defendant over, got inside and slammed the door. Alexander testified that he saw defendant grab the victim's arm only once on the way to Tangipahoa, when defendant threatened to put the victim out of the car if she did not behave. Thereafter, she agreed to behave.

ASSIGNMENT OF ERROR NO. 1:
By means of this assignment, defendant contends that the trial court erred by denying his motion for mistrial based on a police officer's testimony in regard to another crime. He argues that he was entitled to a mistrial because the officer's reference to another crime was deliberate and an admonition to the jury to disregard the reference was insufficient.
During the prosecutor's direct examination of detective George Heath, the following colloquy took place:
Q. Detective Heath were you so employed by the Jefferson Parish Sheriff's office on January 30, 1983?
A. Yes sir I was.
Q. Did you have occasion that date to engage in an investigation involving [the victim]?
A. Yes sir I did.
Q. Would you please tell the court how you happened to meet [the victim]?
BY MR. SCHWARTZ:
Your Honor I am going to at this time object to any ... I am going to object to any statement that was made by [the victim] to this officer as being hearsay.
BY MR. DILEO:
I asked him how he met [the victim]. I don't see how we even involve approaching that.
BY THE COURT:
Proceed.
BY MR. DILEO:
Q. How did you meet [the victim]?
A. She was making a complaint that she was a victim of a kidnapping.
Thereupon, defense counsel entered his objection and requested a mistrial. Prior to hearing arguments on the objection, the jury was retired from the courtroom. The trial court denied the mistrial and admonished the jury to disregard the pertinent testimony.
LSA-C.Cr.P. art. 770 provides in pertinent part as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible....
A police officer's unsolicited, unresponsive reference to another crime alleged to have been committed by a defendant is not the comment of a court official under LSA-C.Cr.P. art. 770(2), but such an officer will be held to the same standard if his answers show a pattern of unresponsiveness or improper intent. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Harris, 383 So.2d 1 (La.1980).
In the instant case, out of the jury's presence, the trial court asked the prosecutor whether or not he had anticipated the witness' response. The prosecutor emphatically denied that he anticipated the response. The record reflects that the trial court concluded that the officer's response was not made with improper intent and was not chargeable to the state. We concur with the foregoing conclusions of the *551 trial court. Accordingly, a mistrial was not mandated under LSA-C.Cr.P. art. 770, and the trial court's admonition to the jury was sufficient to cure any possible prejudice. We, therefore, find no abuse of the trial court's discretion.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:
By means of this assignment, defendant asserts that the verdict is contrary to the law and the evidence. Defendant, in brief, attacks the credibility of the victim and specifically requests that this Court review her testimony in light of her credibility.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post verdict judgment of acquittal had been filed under LSA-C.Cr.P. art. 821.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La. 1986).
Initially, we note that the testimony of the victim is sufficient to establish the elements of the offense. State v. Robinson, 491 So.2d 451 (La.App. 1st Cir.1986). In finding defendant guilty, it is obvious that the jury believed the victim. The credibility of the victim's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
Considering the victim's testimony in relation to the respective physical size and appearance of defendant and the victim,[1] together with the series of eight photographs (S-1) depicting injuries inflicted upon the victim, any rational trier of fact, viewing the evidence in the light most favorable to the state, could have found the essential elements of aggravated crime against nature[2] beyond a reasonable doubt.
This assignment is without merit.

*552 ASSIGNMENT OF ERROR NO. 3:
By means of this assignment, defendant contends that his sentence is disproportionate to the offense. He argues that, as a first felony offender, his sentence should have been suspended and he should have been placed on probation. Defendant also asserts that this Court should not consider the trial court's comments regarding various criminal charges which did not result in conviction, because he did not have a hearing to show why the charges were dismissed. Defendant further argues that the trial court failed to follow the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1.
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251 (La.1983). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, supra. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Maximum sentences are imposed for the most serious violations of the described offense and for the worst kind of offender. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Leason, 477 So.2d 771 (La.App. 1st Cir.1985). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
The Code of Criminal Procedure sets forth items which must be considered by the trial judge before passing sentence. La.C.Cr.P. art. 894.1. The trial judge need not recite the entire checklist of article 894.1, but the record must reflect that he adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La. 1984). In light of the criteria expressed by article 894.1, a review of individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Cox, 369 So.2d 118 (La. 1979).
LSA-R.S. 14:89.1 provides that aggravated crime against nature is punishable by imprisonment at hard labor for not less than three nor more than fifteen years, without benefit of suspension of sentence, probation or parole. Herein, defendant received the maximum sentence.
In the instant case, the trial court ordered a presentence investigation report. In sentencing defendant, the court referred to the report, noting defendant's extensive criminal record detailed therein. The trial court noted defendant's criminal record included: three arrests for driving while intoxicated and resisting a police officer; two arrests for armed robbery and distribution of marijuana; and arrests for possession of marijuana, aggravated battery of a police officer and simple battery against four police officers. The presentence investigation report further shows that defendant was charged in 1975 with forcible rape, although the charge was never prosecuted. The trial court noted that defendant had been convicted of trespassing and vagrancy, as well as three counts of disturbing the peace.
Prior criminal activity which the court may consider when sentencing a defendant is not limited to prior convictions. State v. Johnson, 446 So.2d 1371, 1375 (La.App. 1st Cir.), writ denied, 449 *553 So.2d 1347 (La.1984). Contrary to defendant's argument in brief, that he was denied an opportunity for a hearing at which he might have shown the reasons why various criminal charges were dismissed against him, the record does not reflect, nor does defendant contend, that any request was made to rebut any information contained in the presentence investigation report. Under such circumstances, we conclude that defendant waived the opportunity to rebut information in the presentence investigation report regarding the various charges not resulting in convictions. See State v. Washington, 414 So.2d 313 (La.1982).
The presentence investigation report discloses that defendant was born on July 8, 1951; and he is classified as a first felony offender. The report further discloses that, according to defendant, he quit school in 1966 at the eighth grade level. He was involved in heavy alcohol and drug usage at the time of his arrests for armed robbery. The report also shows defendant admitted to prior LSD and cocaine usage, while maintaining that he has refrained from using hard drugs in the past several years. He advised that he presently uses only marijuana and limits himself to a joint a day.
In sentencing defendant, the trial court noted that, in accordance with LSA-C.Cr.P. art. 894.1, it was incumbent upon the court to explain its reasons for sentencing. The court noted that it had previously revoked defendant's bond, in reference to the instant conviction, because the court had learned that defendant had been charged with a second degree battery, allegedly committed on February 6, 1986. The court noted in the reference to the battery charge that the victim had been beaten unmercifully. We note that the record reflects that the victim of the beating was rendered unconscious. The record reflects that the victim was so severely injured that he was unable to testify at a preliminary examination held on May 21, 1986, in reference to the charge. The record further reflects that, as a result of the preliminary examination, a determination was made that there was no probable cause to support the charge of second degree battery against defendant. Nonetheless, the charge was properly taken into consideration by the sentencing court in rendering sentence. See State v. Johnson, supra.
In giving its reasons for sentence, the trial court stated:
Sir, you have been (sic) the benefit of a lot of help. I don't think I have ever seen in my career of eight years as a Judge, any man who has had either the District Attorney's Office, the Sheriff's office or potential political influence assisting you out of as many scrapes as you have been in and I attempted to assist you, Mr. Tate, but Mr. Tate, you... continue to abuse people or you have up until this point. Mr. Tate, you are incordiable (sic). You have a file almost an inch and a half thick with the Tangipahoa Parish Sheriff's Office. I have read to you the many charges which you have received and only one time was there anybody courageous enough to go forward and convict you of that crime to which you were charged with at that time and I heard all of the gory details. But still in an endeavor to assist a man, to rehabilitate himself, and now you have made a mockery of me, you have made a mockery of this court and I assure you of this under all of the provisions intended to imprison a person under 894.1, you meet everyone (sic) of them. Mr. Tate, the criminals may not be you. It may be me and those who assisted you and the Superior Courts if they let you out of prison one day before you served your maximum period of time. In accordance with 14:89.1, aggravated crime against nature, I find no mitigating circumstances to benefit you under any circumstances.
Herein, the trial court adequately satisfied the criteria set forth in LSA-C.Cr.P. art. 894.1. The sentence imposed on defendant is not apparently severe in relation to defendant or the offense committed, nor is it a needless imposition of pain and suffering. The statement of the trial court's reasons shows the court's *554 familiarity with defendant's history and the circumstances of the crime. Hence, under the circumstances of this case we are unable to say that the trial judge abused his discretion in imposing the maximum sentence. Accordingly, we do not find the sentence to be excessive.
This assignment lacks merit.
AFFIRMED.
NOTES
[1] As previously set forth in this opinion, the victim testified that she is 5'4" and one hundred eighteen pounds. She estimated defendant as being 5'8" and one hundred eighty pounds.
[2] At the time of the instant offense, LSA-R.S. 14:89.1 provided, in pertinent part, as follows:

Aggravated crime against nature is a crime against nature committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but such resistance is overcome by force;
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) When through idiocy, imbecility, or any unsoundness of mind, either temporary or permanent, the victim is incapable of giving consent and the offender knew or should have known of such incapacity;
(4) When the victim is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of mind produced by a narcotic or anesthetic agent, administered by or with the privity of the offender; or when he has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of such incapacity; or
(5) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Crime against nature is defined in LSA-R.S. 14:89(A)(1) as follows:
The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. [The statutory references are to the crimes of aggravated rape, forcible rape and simple rape respectively.] Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.