537 So.2d 313 (1988)
STATE of Louisiana
v.
Ellillya CHANEY a/k/a Illya Chaney.
STATE of Louisiana
v.
Ellillya CHANEY a/k/a Illya Chaney.
Nos. 88KA0686, 88KA0687.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
Writ Denied April 14, 1989.
Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge by Richard Sherburne, Asst. Dist. Atty., for plaintiff-appellee.
Office of the Public Defender, Baton Rouge by Jack Nossaman, Asst. Public Defender, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
*314 WATKINS, Judge.
Illya Chaney (a/k/a Ellillya Chaney) was charged by bill of information with simple burglary, in violation of LSA-R.S. 14:62. He pled not guilty, was tried by jury and was found guilty as charged. Defendant was subsequently charged, adjudged and sentenced as a Second Felony Habitual Offender. The court sentenced defendant to a twenty-four year term of imprisonment at hard labor, to be served consecutively to any sentence presently being served. He has appealed, urging eight assignments of error:
1. The trial court erred by overruling defense counsel's objection to Officer Lively's testimony at trial, stating his opinion as to "what is usual or unusual regarding fingerprints."
2. The trial court erred by allowing defendant to be fingerprinted in open court at the habitual offender hearing.
3. The trial court erred by allowing state exhibit number 5 to be introduced into evidence at defendant's habitual offender hearing.
4. The trial court erred by allowing the state to recall Mr. Piedrahita to testify at the habitual offender hearing.
5. The trial court erred by allowing state exhibits 9 and 10 into evidence at the habitual offender hearing.
6. The trial court erred when it adjudged defendant a habitual offender.
7. The evidence was insufficient to convict defendant.
8. The trial court erred by imposing an excessive sentence and failing to comply with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1.
In brief, defendant expressly abandoned assignments one through six, stating that they lacked merit.
The record reflects that the instant offense occurred on April 7, 1987, at approximately 3:00 a.m. in the parking lot outside a private social club located on North Boulevard in Baton Rouge. A Toyota van belonging to Mary Gayle Mitchell, a member of the club, was broken into and entered by three men. The point of entry was apparently the van's left front door. The glass window of the door had been smashed to pieces. Mitchell determined that a fur coat (for which she had paid $115.00), an empty cassette holder and a check were missing from the van.
The record reveals that the instant offense was in progress when state witnesses, Jesse Chase and his girlfriend, Jacqueline Payne, exited the door of the club which leads to the parking lot. The testimony given by Chase and Payne revealed that three men were inside or partially inside the van. Two of the men broke and ran from the scene toward North Boulevard. Chase pursued the third man who Payne described as crippled. The third man tried to run and got inside another car parked in the parking lot. Lenville Small, the operator of the social club, had been alerted by Chase as to the instant offense; and he used his car to block the car occupied by the third man. Thereupon, the third man got out of the car and was apparently prevented from leaving by the witnesses and/or others.
Payne and Chase made in-court identifications of defendant as the third man. Additionally, Small testified that it was Illya Chaney that he had blocked with his car, although he learned defendant's name only after the instant offense.
Lenville Small telephoned the police. Baton Rouge City Police Officer Rosalind Marshall received a call informing her of the instant offense and that a suspect was in custody. In response, she went to the crime scene. According to Marshall, defendant had rags wrapped around his hands and was walking with a limp. Consistent with testimony given by Chase and Payne, Marshall stated that defendant had a wooden cane (which he apparently used to aid him in walking). Marshall advised defendant of his Miranda rights, but she did not question him. Defendant, however, told Marshall that he "didn't do it," that he had been walking home from his girlfriend's house when two people asked him if he wanted a ride in a car, that he accepted the offer, that when they arrived at the scene they got out of the car, and that his purpose in getting out was to "use the *315 bathroom." Defendant told Marshall that he urinated and apparently pointed out to her the location where he allegedly urinated near a fence on a cement surface having no area of open ground. Marshall checked the location carefully, but she neither found a "urine spot," nor did she detect the odor of urine.
ASSIGNMENT OF ERROR NO. 7:
By means of this assignment, defendant contends that the evidence was insufficient to convict him of simple burglary. Defendant's argument centers around his assertion that the state failed to prove his identity as the perpetrator. Defendant also argues that the evidence "at best" establishes a reasonable inference of guilt but that it is not sufficient to exclude all reasonable hypotheses of innocence.[1]
Initially, we note that, in order to challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673 (La.App. 1st Cir.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). Where the key issue is a defendant's identity as the perpetrator, rather than whether or not the crimes were committed, the state is required to negate any reasonable probability of misidentification. State v. Holts, 525 So.2d 1241 (La.App. 1st Cir.1988).
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypotheses of innocence." This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, 483 So. 2d 953 (La.1986).
LSA-R.S. 14:62 provides in pertinent part as follows:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60.
The crime of simple burglary requires a specific intent to commit either a felony or a theft at the time of the unauthorized entry. State v. Jones, 426 So.2d 1323, (La. 1983). However, specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. LSA-R. S. 15:445; State v. Moore, 477 So.2d 1231 *316 (La.App. 1st Cir.1985), writs denied, 480 So.2d 739, 741 (La.1986).
We must look to the inferences made by the trier of fact based on circumstantial evidence and these inferences need only exclude all reasonable hypotheses, not every possible theory, of innocence. State v. Moore, 477 So.2d at 1234. Our review of the record convinces us that this standard has been met in the instant case.
Three men were observed by Jesse Chase and Jacqueline Payne inside or partially inside the victim's van. According to Chase, he was startled when he exited the club and saw the three men in the parking lot "breaking in cars." Payne stated that she heard a lot of noise when she and Chase came out of the club, drawing her attention to the three men who were breaking into the victim's van. The testimony of Chase and Payne revealed that two of the men got out of the van, ran and thereby apparently successfully fled the scene. The third man, who Chase and Payne identified at trial as defendant, unsuccessfully tried to leave the crime scene. Flight and/or attempt to avoid apprehension indicates consciousness of guilt and, therefore, is one of the circumstances from which a juror may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982). Small, who had been alerted by Chase that the offense was occurring testified that defendant was the person in the car that he blocked with his own car. In the instant case, the state's evidence negated any reasonable probability of misidentification.[2] Other evidence showed that the window of the front left door of the van had been broken and that the victim's fur coat, cassette holder and check were missing.
The jury's verdict shows that the jurors accepted the state's witnesses as credible. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d 546 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Applying the statutory rule as to circumstantial evidence as a component of the more comprehensive reasonable doubt standard, we find that the evidence was sufficient proof of the essential elements of simple burglary and defendant's identity as a perpetrator of that crime beyond a reasonable doubt.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 8:
By means of this assignment, defendant contends that the trial court erred by imposing an excessive sentence and failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. Defendant claims that his sentence is grossly disproportionate in light of the harm done to society.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La. 1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, supra. In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 *317 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Moreover, maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender. State v. Mathews, 428 So.2d 988 (La.App. 1st Cir. 1983). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La. 1982).
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829 (La.App. 1st Cir.), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C. Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984). Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Davis, 448 So.2d at 653.
Simple burglary is punishable by a possible fine of not more than two thousand dollars and/or imprisonment with or without hard labor for not more than twelve years. LSA-R.S. 14:62. However, as a Second Felony Habitual Offender, defendant's sentence of imprisonment was required to be not less than four nor more than twenty-four years. LSA-R.S. 15:529.1A(1). Herein, defendant received the maximum sentence of twenty-four years imprisonment at hard labor; and no fine was imposed.
The record reflects that the trial court ordered a presentence investigation report. The report revealed that defendant had an extensive juvenile record involving theft, simple battery, aggravated battery, aggravated assault, simple robbery, burglary, forgery and illegal carrying of a weapon. The presentence investigation report further revealed that, although defendant was only twenty-two years old, defendant's adult criminal record included arrests for misdemeanor theft, attempted theft, felony theft, possession of stolen property, attempted simple burglary, simple burglary, contributing to the delinquency of a juvenile and aggravated battery. Defendant had criminal convictions for attempted first degree murder of a police officer and simple burglary.
The presentence investigation report concluded that defendant appeared to be an incorrigible criminal. Accordingly, the report recommended that the maximum sentence be imposed in this case.
In its initial sentencing remarks, the trial court stated that it had reviewed the presentence investigation report. Thereafter, the court stated the following:
I find specifically, sir, that you have been arrested and convicted for previous felonies in your past history. As far as the crime against a person, you were charged with attempted first degree murder on November 22, 1985, when you fired a gun at a peace officer engaged in the performance of his lawful duties. You were sentenced to 20 years at hard labor, suspended, and placed on active supervised probation for a period of five years arising out of that incident there. While on probation on that particular charge, you were arrested for and subsequently convicted on these particular charges here of simple burglary. Also in that previous charge you were sentenced to three years at hard labor for simple burglary, the same exact sort of offense for which you were convicted in this particular matter. You were also sentenced to the same supervised probation during that period and you committed the exact *318 same type of offense while on probation, which you were subsequently convicted for on this particular charge here. It specifically reflected that you were advised of your conditions of probation on March 17, 1987, and less than one month later you were charged with this particular offense, which was on April 7, 1987. Less than one month after you were put on probation you committed this same type of offense. (R 190-191)
In additional sentencing reasons, the trial court noted that defendant's history exhibited a disregard for any type of societal rules, even after being given the chance through probation to conform to those rules. The court noted that the presentence investigation report recommended the maximum sentence, and the court stated that it concurred in that recommendation. The court stated that based on defendant's history there was an undue risk that during any type of suspended sentence or probation that defendant would commit another crime. The court further stated that defendant was in need of correctional treatment or a custodial environment that could best be provided by commitment to a correctional institution and that any lesser sentence would deprecate the seriousness of the instant offense.
In our view, the trial court adequately complied with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1. Although defendant received the maximum term of imprisonment, we do not find the sentence so grossly disproportionate as to shock our sense of justice. Clearly, defendant poses an unusual risk to public safety due to his past conduct of repeated criminality. Accordingly, we do not find the sentence imposed to be excessive.
This assignment lacks merit.

DECREE
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant additionally argued in brief that his identification by Jesse Chase and Jacqueline Payne failed to meet the five factor test for reliability set forth in State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). This additional argument is related to the admissibility of the witnesses' identification testimony. Thus, the argument exceeds the scope of assignment 7 which pertains only to the alleged insufficiency of the evidence. Because the argument is beyond the scope of assignment 7 and is not included in any other formal assignment of error, the argument is not properly before this Court. In accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 884 and 920, this Court will not consider such an argument which is neither assigned as error nor related to error patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 n. 1 (La.1977); State v. Overton, 337 So.2d 1201 (La. 1976). Furthermore, the argument represents a new ground for objection not articulated to the trial court, which may not be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Hawkins, 496 So.2d 643 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987).
[2] We note that in brief defendant asserted that Jesse Chase's ability to make an identification was "greatly impaired" by alcohol Chase had consumed. Contrary to defendant's further assertion that Chase testified he had been "drinking heavily that night" and had consumed a pint of gin, the testimony of Jesse Chase and Jacqueline Payne revealed the following.

Jesse Chase testified that, on the day in question, he brought alcohol to the club. He stated that he drinks gin and had "left" an empty pint at the establishment that night but that he could not estimate how much of the gin he had consumed that night. In further testimony, Chase stated that he had had a couple of drinks, "two or three shots," and was a "little high," but he stated that he was not "stumbling."
According to Jacqueline Payne, Chase had had a "few drinks"; but he was not drunk. During her testimony on direct examination, Payne characterized herself as a "moderate drinker ... but ... not really a drinker." Thereafter, on cross-examination, she stated that she had had one drink on the day in question.