569 So.2d 163 (1990)
STATE of Louisiana
v.
Nolan R. JARVIS. (Two Cases)
Nos. 89 KA 1920, 89 KA 1921.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*164 Bryan Bush, Dist. Atty., by Jesse Bankston, Asst. Dist. Atty., Office of the Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Nolan Renal Jarvis was charged by bill of information with first degree robbery, a violation of LSA-R.S. 14:64.1.[1] He pled not guilty, was tried by a jury and was found guilty as charged. Defendant was subsequently charged, adjudged and sentenced as a Second Felony Habitual Offender. The trial court sentenced defendant to imprisonment at hard labor for a term of thirty years without benefit of probation, parole or suspension of sentence. He has appealed, urging four assignments of error:
1. The trial court erred by sustaining the state's objection to alleged hearsay testimony.
2. The evidence was insufficient to convict defendant.
3. The trial court erred by imposing an excessive sentence and failing to adequately follow the sentencing guidelines in LSA-C.Cr.P. art. 894.1.
4. The trial court erred by adjudicating defendant a habitual offender.
In brief, defendant expressly abandoned assignment of error number one.
The record reflects that the instant offense occurred at about 6:45-7:00 a.m. on January 6, 1989, at the Circle K store located at 2223 North Acadian Thruway West in Baton Rouge. At the time in question, Mr. Darren Jarvis (defendant's brother), an employee of the store, was working behind the counter. Ms. Tewonia McQuirter, the store manager, was in the rear of the store in a room not open to the public. Two young, black males came into the store together. At that time, the only other individual in the store was Mr. Bennett Crawford, a regular customer of the store.[2]
One of the young, black males who had entered the store went into the back room where Ms. McQuirter was sorting and counting the store's money. The man ran toward Ms. McQuirter with a gun pointed at her. Grabbing Ms. McQuirter by her hair, he told her: "Bitch, don't say anything, turn around, lie down on the floor with your face to the floor." Fearing that the man would shoot her, Ms. McQuirter complied. The man took all of the store's money but left some checks and food stamps.
A few minutes later when Ms. McQuirter heard the sound of the buzzer on the front door of the store, she surmised that the perpetrator(s) had left. She slowly got up *165 and peeped out to see what was happening. When she got to where she could look outside, she heard two gunshots which Mr. Darren Jarvis had purportedly fired at the perpetrator(s). Ms. McQuirter retreated to the back room. After hearing the front door open again, Ms. McQuirter heard Mr. Darren Jarvis call out to her, asking if she was okay. She replied in the affirmative and came out of the back room. At the time, Mr. Bennett Crawford was still lying on the floor.
On the day before the robbery of the Circle K store, defendant went to the apartment of Ms. Helen Bell and Ms. Valerie Victoria Clark. While there, he disclosed to them his plan to commit a robbery at the Circle K store in question, telling the women that his brother (who worked at the store) and a cousin would assist him or otherwise be involved in the crime. Defendant also requested that Ms. Clark allow him to use her car during the planned robbery, but she refused the request. Prior to the commission of the Circle K robbery, neither Ms. Bell nor Ms. Clark made any disclosure of defendant's announced robbery plan.
On the day the instant offense was committed, defendant stated in the presence of Ms. Bell and Ms. Clark that he had committed the robbery at the Circle K store on Acadian Thruway and that his brother and cousin were with him at the time of the robbery. Defendant displayed some of the stolen money to Ms. Bell and told Ms. Clark he had taken $9,000. At trial, Ms. Clark testified that on the day after the robbery she called Crime Stoppers; subsequently, she received a $250.00 reward for information concerning the Circle K robbery.
On January 17, Officer Steve Woodring (who had been investigating the instant offense) was notified of the Crime Stoppers tip concerning defendant's involvement in the instant offense. That same day, Officer Woodring went to the Circle K store with a photographic display which Ms. McQuirter viewed. From the display, Ms. McQuirter unhesitatingly identified defendant as the man who robbed her on January 6. On January 18th or 19th, Officer Woodring went to defendant's address (which had been provided by the Crime Stoppers' tip). Defendant was not at home; Ms. Shonta Allen, defendant's girlfriend, was home. She voluntarily consented to a search of the residence, and she surrendered a BB pistol when asked if defendant had a pistol. The search produced no additional evidence. Thereafter, on January 30, Ms. McQuirter viewed a physical lineup and again identified defendant as the robber.
At trial, Ms. McQuirter identified State Exhibit S-3 as the gun that the robber pointed at her. She testified that she believed it was a real gun. She stated that, when the robber ran toward her with the gun, she was able to look him in the face and that they were looking at each other as he grabbed her by her hair. Additionally, the robber was not wearing any type of mask or disguise. Ms. McQuirter stated that defendant's appearance had not changed since the robbery. During her testimony, Ms. McQuirter made a positive in-court identification of defendant as being the robber and the same individual she had previously identified at the pre-trial photographic and physical lineups. Ms. McQuirter's testimony indicated that the amount of money taken by the robber was an estimated $6,000.00.
At trial, the defense relied primarily upon testimony given by defendant, Ms. Shonta Allen and her sister, Ms. Tammy Allen. That testimony reflected that on January 6, 1989, defendant and Ms. Shonta Allen were living together in an apartment. At about 7:00-7:15 a.m. on January 6, Ms. Tammy Allen went to the apartment and knocked on the door. Ms. Shonta Allen was still in the bed, and defendant was in the bedroom with her. When the two sisters left the apartment at about 7:45-8:00 a.m., defendant was still in bed.
Defendant acknowledged that he knew Ms. Valerie Clark, but he maintained that he did not recall talking to her or to Ms. Helen Bell on January 5th or 6th. More specifically, defendant denied that he ever told them he was going to commit a robbery; *166 he stated that their testimony that he told them he committed the robbery at the Circle K with his brother and cousin was untrue. Additionally, in testifying on his brother's behalf, Mr. Darren Jarvis stated that defendant was not the individual who robbed Ms. McQuirter.
On rebuttal, the state offered additional testimony, including that of Ms. Jacqueline Lynnette Weber. Ms. Weber testified that she worked at the Circle K store in January of 1989. She stated that she knows defendant. The two of them attended the same high school. At about 6:30 a.m. on January 6, 1989, she passed by the Circle K in her car. At that time, she saw defendant across the street from the store, and she was positive of his identity.

ASSIGNMENT OF ERROR NUMBER TWO:
By means of this assignment, defendant contends that the evidence introduced at trial was insufficient to prove that he committed the crime of first degree robbery.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. State v. Tate, 506 So.2d 546 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post verdict judgment of acquittal had been filed under LSA-C.Cr.P. art. 821.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must determine if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime and defendant's identity as perpetrator of that crime were proved beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Greene, 542 So.2d 156 (La.App. 1st Cir.), writ denied, 548 So.2d 1229 (La.1989).
First degree robbery is defined in LSA-R.S. 14:64.1 A, as follows:
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
Herein, the jury's guilty verdict indicates that the jury accepted the testimony of Ms. McQuirter, Ms. Bell, Ms. Clark and the other state witnesses as more credible than that of defendant and his witnesses. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). The credibility of a witness's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d at 551. Viewing all of the evidence in the light most favorable to the prosecution, we conclude that the state proved beyond a reasonable doubt that defendant committed the crime of first degree robbery.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment, defendant asserts that the evidence presented at the habitual offender hearing was insufficient to establish his identity as a second felony offender.
To establish the predicate conviction, the state introduced State Exhibits S-1 and S-2. S-1, a certified copy of a bill of information bearing docket number 5-86-166 of the Nineteenth Judicial District Court, charged that a Nolan R. Jarvis committed felony theft on or about March 6, 1986. S-2, certified copies of the pertinent minute entries with corresponding docket number, revealed that on July 2, 1986, Nolan Jarvis pled guilty to the felony theft charge and that on October 30, 1986, Nolan Jarvis received a suspended sentence of eighteen months at hard labor and was *167 placed on active, supervised probation for two years.
The state presented the testimony of Robert McConnell, a state probation and parole agent. At the hearing, McConnell identified defendant as the Nolan Jarvis referred to in S-1 and S-2. McConnell stated that he conducted the initial interview with defendant in regard to defendant's probationary sentence for the predicate felony theft conviction and that he supervised defendant for that sentence.
Initially, we note that defendant additionally asserts that it is unclear from the record if the five year "cleansing" period in LSA-R.S. 15:529.1 C had elapsed. We disagree.
LSA-R.S. 15:529.1 C provides that the habitual offender law is not applicable in cases where more than five years has elapsed since the expiration of the maximum sentence(s) of the previous conviction(s) and the time of commission of the last felony for which the defendant has been convicted. Herein, the certified copies of the court minute entries pertaining to the predicate conviction showed that the conviction occurred on July 2, 1986, and the sentence for the conviction was imposed on October 30, 1986. Because the instant offense was committed on January 6, 1989, only slightly more than two years and two months after imposition of sentence for the predicate conviction, it is clear that the five year "cleansing" period had not expired. We now focus our attention on defendant's remaining contentions.
In order to prove a defendant is a habitual offender, the state has to establish by competent evidence that the defendant was convicted of the prior felony. See, e.g. State v. Chaney, 423 So.2d 1092 (La.1982). LSA-R.S. 15:529.1 permits the establishment of prima facie proof of a prior felony conviction by compliance with subsection F. Nevertheless, jurisprudence has established that necessary facts which permit enhanced punishment may be proved by other competent evidence. State v. Anderson, 486 So.2d 783 (La.App. 1st Cir. 1986).
Various methods of proving identity have been recognized. In State v. Curtis, 338 So.2d 662, 664 (La.1976), the supreme court stated:
We do not consider that identity of name of defendant and the person previously convicted is sufficient evidence of identity. Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record. [footnote omitted]
In finding that the state's evidence proved beyond a reasonable doubt that defendant was the same Nolan Jarvis convicted of the predicate felony theft offense, the district judge further noted that the guilty plea to the predicate offense had been entered in his court. Thus, the district judge stated that he was taking judicial cognizance pursuant to LSA-C.E. art. 201 that defendant was the same individual convicted of the predicate offense.
Herein, we concur with the district judge that certified copies of the bill of information and court minutes relating to the predicate offense together with the testimony of the probation and parole agent proved beyond a reasonable doubt that the Nolan Jarvis convicted of the predicate felony offense is the same Nolan Jarvis convicted of the instant offense. Furthermore, notwithstanding defendant's contentions to the contrary, the district judge could and properly did take judicial notice of the fact that defendant was the same individual who had pled guilty to the predicate offense in the judge's court. LSA-C.E. art. 201; See also State v. Valentine, 397 So.2d 1299 (La. 1981).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE:
By means of this assignment, defendant contends that the trial court erred by imposing an excessive sentence and failing to adequately follow the sentencing guidelines in LSA-C.Cr.P. art. 894.1.
*168 Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d at 552. In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine if a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988).
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829 (La.App. 1st Cir.), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984). Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
First degree robbery carries a penalty of imprisonment at hard labor for not less than three nor more than forty years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64.1 B. However, as a Second Felony Habitual Offender, defendant's penalty exposure was for a minimum of thirteen and one-third years and a maximum of eighty years. LSA-R.S. 15:529.1 A(1).[3] Herein, defendant was sentenced to imprisonment at hard labor for a term of thirty years, without benefit of parole, probation or suspension of sentence, with credit for all time served from the date of his arrest for the instant offense.
The record reflects that, immediately before the trial court began articulating its reasons for sentencing, it referred to the fact that the court had given defense counsel an opportunity to review the presentence investigation report. At this juncture of the sentencing proceeding, the trial court asked defense counsel if he wished to make any comments relative to the matters contained in the presentence investigation report. Defense counsel responded by asking the court to give defendant credit for any time served. Counsel also asked for the court's mercy and asked that the court consider that defendant was 24 years old and had a four-year-old child.
*169 In its initial sentencing remarks, the trial court noted that it had the benefit of the presentence investigation report. The court then orally restated the provisions of LSA-C.Cr.P. art. 894.1 A(1), (2), and (3). In doing so, the court noted that defendant was not eligible for a probated or suspended sentence, that (in regard to defendant's prior felony theft conviction) the court had previously given defendant the benefit of probation which obviously did not work, and that defendant's commission of the instant offense showed his conduct had escalated to more serious criminal conduct involving misappropriation against the person of another. The court also noted that, although defendant was tried and convicted of the first degree robbery, the facts of the instant offense could legally have constituted an armed robbery. The court took cognizance of the fact that the presentence investigation report showed defendant had been arrested on January 18, 1989, and had remained incarcerated since that time; the court then stated that defendant would be given credit for that period of incarceration.
In regard to defendant's criminal history, the trial court first noted that defendant apparently had no juvenile record. However, as an adult, defendant had been arrested in 1984 for disturbing the peace, simple assault, and resisting an officer; the court stated that defendant pled guilty to the charge of resisting an officer and that the other two charges were dismissed. The court noted that defendant's next criminal conviction was for the predicate felony theft. In regard to the predicate conviction, the court noted it had placed defendant on active, supervised probation for a period of two years. Consistent with the contents of the presentence investigation report, the trial court noted that while serving the probated sentence defendant had performed poorly.
After reviewing defendant's social history, including his educational and employment backgrounds, the court stated that it had also reviewed the provisions of LSA-C. Cr.P. art. 894.1 B in determining the length of the sentence to be imposed. By way of elaboration, the trial court noted the instant offense involved the use of a gun in the commission of a misappropriation against another person, a situation which had the potential of causing other persons to become involved in an attempt to defend the victim; in that regard, the court stated that certainly defendant had to contemplate that his conduct would cause or could threaten serious harm. The court further stated that it found no provocation for defendant's actions and no grounds tending to excuse or justify defendant's criminal conduct. In conclusion, the court noted that defendant's current character and attitude indicated to the court that defendant was likely to commit other offenses.
In our view, the trial court adequately complied with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1. The sentence imposed was substantially less than one-half the maximum permissible sentence for a Second Felony Habitual Offender. We cannot say that the sentence imposed is excessive under the circumstances. It is not apparently severe in relation to defendant or the offense committed. The trial court's reasons reflect that the court considered the range of sentencing alternatives and individualized the sentence to the particular crime involved. Hence, this assignment lacks merit.
Considering the foregoing the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The bill of information jointly charged defendant and Darren Jarvis with the instant offense. However, the bill of information reflects that it was amended on September 18, 1989, by the state to dismiss the charge against Darren Jarvis.
[2] The record reflects that Mr. Bennett Crawford did not testify at trial. However, the trial court ruled that, because the defense had established the required foundation to show that Ms. Crawford was unavailable as a witness at trial, Mr. Crawford's testimony at a March 22, 1989, preliminary examination hearing was admissible on behalf of defendant pursuant to LSA-C.E. art. 804 B. Consequently, the former testimony was presented to the jury.
[3] The provisions of LSA-R.S. 15:529.1 A(1) in effect and applicable to the instant offense were those in effect prior to amendment of that statute by § 1 of Act No. 482 of 1989, which provided in pertinent part, as follows:

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction ..." [Emphasis added.]