LeBLANC, Judge.
Defendants, Louis O. Seal and Clemel Hatcher, were charged by bill of information with taking fish by electric shock (Count 1) and possessing an instrument used in shocking fish (Count 2), in violation of La. R.S. 56:320 C. They pled not guilty; and, after trial by jury, both defendants were found guilty as charged on both counts. For their convictions of taking fish by electric shock (Count 1), both defendants received sentences of ten months in the parish jail. The trial court suspended two months of each sentence and placed defendants on two years supervised probation with general and special conditions of probation. For their convictions of possessing an instrument used in shocking fish (Count 2), each defendant received a sentence identical to the sentence imposed for the conviction of taking fish by electric shock; and the trial court ordered the sentences to run concurrently.[1] The defendants have appealed, alleging two assignments of error, as follows:
1. The evidence was insufficient to support the instant convictions.
2. The trial court erred in imposing excessive sentences.
FACTS
Hardy Thomas was employed by the L & L Hunting Club to patrol the hunting lease. This club is located along the Pearl River in Washington Parish. Shortly before dark on the evening of October 21, 1990, Thomas was investigating a strange pickup truck at Mayfield Boat Landing when he heard a boat proceeding up Mayfield Creek. Thomas went down to the area where the boat was parked and observed two men hiding on the bank of the creek behind a large cypress tree. He approached the men, one of whom he recognized as Louis Seal. Thomas had known Seal for approximately twenty years. The other man with Seal was later identified as Clemel Hatcher. On the ground beside Seal and Hatcher was a bucket containing a fish shocking device. Thomas asked the two men what they were doing; but upon looking in the boat and observing several hundred pounds of catfish, he felt he knew the answer. Thomas called to a companion, Willie J. Crain, who remained at the scene and watched the defendants, while Thomas summoned a game warden. Before Thomas left, Seal asked him to let Hatcher go because Hatch-er did not know what he was doing and had never been “telephoning” before. Seal offered to “take the whole blame”, but Thomas refused and left to summon the authorities. Thomas drove a short distance to Merl Carrier’s camp, and Carrier contacted Department of Wildlife & Fisheries agent Wayne Morris.
When Agent Morris arrived at the scene, he took several photographs of the boat and the catfish (State Exhibit 3 in globo), before the fish were released. Agent Morris arrested the defendants and transported *941 them to the Bogahisa Jail. Those fish which were already dead were given to charity by Agent Morris and Agent Relton Sumrall.
Subsequently, Mark McElroy, a Wildlife & Fisheries biologist, successfully tested the shocking device at Toledo Bend Fish Hatchery and at the Mississippi River. On both occasions, he used the fish shocking device and battery (State Exhibits 1 and 2) to shock-fish to the surface.
At the trial, Thomas related how he first encountered the defendants on the bank of Mayfield Creek; and he explained the circumstances which led to their arrest. Agents Morris and Sumrall also related their involvement in the arrest of the defendants, the photographing and release of the catfish, and the disposal of the dead fish. Thomas, Morris, and Sumrall testified that the catfish had no holes, scrapes, scratches, marks, or other injuries indicating that they had been caught by legal means. McElroy explained how he successfully tested the fish shocking device on two occasions.
ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendants contend the evidence was insufficient to support their convictions. We note that, in order to challenge these convictions on the basis of insufficiency of the evidence, the defendants should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La.R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (1988).
La.R.S. 56:320 C provides, in pertinent part:
No person shall take fish by means of ... electricity, or any instrument or device capable of producing an electric current used in shocking said fish; ... It shall be unlawful to possess any of the prohibited instruments, weapons, substances, or devices set out hereinabove with the intent to take fish in violation of the provisions of this Section.
In their brief to this Court, the defendants note that no one saw them catching the catfish found in the boat, nor was any proof introduced to establish the ownership of the boat. These assertions are correct. However, we note that defendants also misstate a key fact in their brief. They contend that the exact location of the shocking device was never established because Hardy Thomas could not recall whether it was in the boat or in the bucket on the bank of Mayfield Creek. This assertion is incorrect. While Thomas could not recall whether the battery was inside the boat or the bucket, he testified that the shocking device was inside the bucket, which was on the bank of Mayfield Creek behind a large cypress tree. Defendants were standing behind this cypress tree, and the bucket, was at their feet.
Mark McElroy, a Wildlife & Fisheries biologist, testified that the shocking device was operational. While testing the device, he successfully used it to shock fish to the surface both at the Toledo Bend Fish Hatchery and the Mississippi River.
*942 Although this shocking device was made from an electric fence charger, which is by itself a legal device used to produce an electric current in a fence for the purpose of keeping cattle, horses, and other domestic animals away from the fence, State Exhibit 1 clearly was modified for the illegal purpose of taking fish by electric shock, as established by the fact that metal weights were attached to it and it was powered by a marine battery. Considering all of the above, we find sufficient evidence (both direct and circumstantial) was introduced to prove that defendants possessed an instrument or device capable of producing an electric current used in shocking fish with an intent to illegally take fish (Count 2).
The more difficult issue to be resolved is the sufficiency of the evidence to support defendants’ convictions of taking fish by electric shock (Count 1). As noted above, the ownership of the boat was never established, defendants were not seen in the boat, and no one saw them catching the fish found in the boat. On the other hand, defendants were first observed on the bank of Mayfield Creek hiding behind a large cypress tree only a short distance from the boat. The boat contained several hundred pounds of catfish which bore no holes, scrapes, scratches, marks, or other injuries indicating that they were caught by legal means such as hook and line, trotline, nets, traps, etc.
In their brief to this Court, defendants note that Mr. Seal owned a houseboat located approximately thirty yards from the site where defendants were first observed by Mr. Thomas. Defendants conclude:
It is just as probable that the defendants had simply walked from defendant Seal’s camp to the creek bank for any number of legitimate reasons, including their own curiosity as to what was going on! It goes without saying that someone else could have parked the boat on the creek bank and ran (sic) into the woods, leaving the defendants, who stumbled upon the scene, as victims of circumstance only. This person could well have been the unknown owner of the truck which Thomas was investigating on hunting club property. A reasonable hypothesis of innocence exists and a moral certainty as to defendants’ guilt cannot be established. (Defendants’ brief pp. 9-10).
However, this argument completely ignores the inculpatory statement which Seal made to Hardy. Seal’s request that Hardy release Hatcher and allow Seal to take all of the blame for “teléphoning”, when considered with all of the other direct and circumstantial evidence in this case, was sufficient to prove, beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence, that defendants caught these catfish by means of electric shock.
For the above reasons, this assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendants contend the trial court erred in imposing excessive sentences. Specifically, they contend that the facts of this case warranted the minimum sentences of sixty days imprisonment. In the alternative,they contend that the trial court erred in imposing the instant sentences without benefit of parole and, therefore, the sentences must be vacated and remanded.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. *943 State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Former La.R.S. 56:346 provided a minimum sentence of sixty days imprisonment and a maximum sentence of twelve months imprisonment, without suspension thereof, for violations of La.R.S. 56:320 C. In the instant case, each defendant received two concurrent sentences of ten months imprisonment; but two months were suspended by the trial court. The remaining eight months were imposed without benefit of parole, probation, or suspension of sentence. First, we note that the sentences were illegally lenient, since La.R.S. 56:346 provided that such sentences should be imposed without suspension, yet the trial court actually suspended two months of each sentence. Nevertheless, on appeal, this Court cannot correct such illegally lenient sentences. See State v. Fraser, 484 So.2d 122 (La.1986). Next, we note that, while the trial court did state that these sentences were imposed without benefit of parole, when in fact La.R.S. 56:346 contained no such restriction, we find that no error occurred and that the defendants were not prejudiced by this restriction, since the instant offenses were misdemeanors. Only persons convicted of felony offenses and committed to the custody of the Department of Public Safety and Corrections are eligible for parole. See La.R.S. 15:574.4 A(1). Finally, while the trial court did not give extensive reasons for imposing these sentences, it did specifically note at the conclusion of the sentencing hearing that both defendants had extensive records involving various wildlife and fisheries violations. Considering the fact that defendants caught several hundred pounds of catfish by illegal means, that they benefitted to some extent by the trial court’s imposition of illegally lenient sentences, and considering their records of previous wildlife and fisheries violations, we find no abuse of discretion in the sentences imposed.
This assignment of error is meritless.
PATENT SENTENCING ERROR
We note a patent sentencing error. The trial court did not give defendants credit for time served when the sentences were imposed. La.C.Cr.P. art. 880 requires the court to give a defendant “credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.” Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find a patent sentencing error and amend the sentences to reflect that defendants are to be given credit for time served, if any, prior to the execution of their sentences. See La.C.Cr.P. art. 882 A. Resentencing is not required. However, we remand the case and order the district court to amend the commitments and the minute entry of the sentencing to reflect that defendants are to be given credit for time served.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, AS AMENDED; REMANDED WITH ORDER.

. At the time of the instant offenses, the penalty provision for a violation of La.R.S. 56:320 C was contained in La.R.S. 56:346. Defendants were sentenced pursuant to La.R.S. 56:346. However, La.R.S. 56:346 was repealed by Act 270, § 2, of 1991. Section 1 of Act 270 enacted La.R.S. 56:320 H, which provided that a violation of La.R.S. 56:320 C now constitutes a Class IV violation. See La.R.S. 56:34.