591 So.2d 365 (1991)
STATE of Louisiana
v.
Howard Junior WILLIS.
No. KA 90 1745.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Writ Denied March 26, 1992.
*367 Larry Buquoi, Asst. Dist. Atty., Gonzales, for State of La., plaintiff, appellee.
Ernest Forbes, Denham Springs, for Howard Willis, defendant, appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Defendant, Howard J. Willis, was charged by bill of information with the aggravated battery of Frank Hendrix and the simple burglary of a vehicle belonging to Dawn Miller, violations of LSA-R.S. 14:34 and 14:62, respectively.[1] Defendant was tried by a jury, which found him guilty as charged on both counts. Thereafter, the trial court imposed a sentence of five years imprisonment at hard labor for the aggravated battery and a sentence of two years imprisonment at hard labor for the simple burglary. The court ordered that these sentences run consecutively and that defendant be given credit for time served. Defendant has appealed, urging five assignments of errors.
The record reflects that the instant offenses occurred at approximately 2:00 a.m. on December 3, 1988, in Ascension Parish. At the time in question, Dawn Miller and Frank Hendrix were seated on the front seat of Hendrix's car, which was parked in the parking lot at the Watering Hole Lounge. While they were talking, Miller looked at her car which was parked beside *368 Hendrix's car, observed that there was a man inside her car, and informed Hendrix of that fact. The two of them exited Hendrix's car and walked over to Miller's vehicle. After they observed defendant taking money from Miller's purse and placing it into his pocket, Hendrix confronted defendant. Defendant threw the purse back inside Miller's car, started kicking dirt on Hendrix, and struck Hendrix. During this physical encounter, Hendrix proceeded to throw defendant into a ditch; while doing so, defendant wielded a pocket knife, which he used to cut Hendrix.
While both combatants continued their struggle in the ditch, Miller walked to defendant's car which was parked nearby and talked to the occupants of the car, telling them they were defendant's friends and asking that they break up the fight between Hendrix and defendant. Two individuals exited defendant's car. One of these individuals, Timothy Carlton, pulled Hendrix off defendant and restrained Hendrix. While Hendrix was being so restrained, defendant used his pocket knife to inflict another cut, an apparently very severe cut to Hendrix's face. Thereafter, defendant, Carlton, and the other individual, who had exited defendant's car, reentered the car and left the scene.

ASSIGNMENT OF ERROR NO. ONE

(assignment four in defendant's brief)
By means of this assignment, defendant contends that the trial court erred by failing to grant defendant's motion for new trial on the basis that defendant was denied effective assistance of counsel. Defendant contends his trial counsel's simultaneous representation of Timothy Carlton in regard to criminal charges arising from the incident of December 3, 1988, created a conflict of interest. Defendant submits that the actual conflict of interest which allegedly existed consisted of trial counsel's decision to call Carlton as a defense witness at defendant's trial, which thereby hindered Carlton's Fifth Amendment privilege against self-incrimination in order to help defendant. Initially, we note that multiple representation is not per se illegal and does not violate the Sixth Amendment to the U.S. Constitution or Article I, § 13 of the Louisiana Constitution unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475, 484 (La.1983).
In the instant case, defendant was tried alone. During the trial, Timothy Carlton was called to the stand to testify for the defense. However, the record reflects that, before Carlton gave any testimony, the jury was retired from the courtroom and the prosecutor informed the court that Carlton had been charged in Ascension Parish with a crime related to the instant offenses and, thus, Carlton should be informed of his constitutional rights prior to testifying. Thereupon, in response to the court's questioning, Carlton informed the court that defendant's trial counsel, Frank Ferrara, was the lawyer representing him in regard to the crime with which he was charged. When the court asked Carlton if he wished to have a conference with Ferrara, Ferrara told the court that he and Carlton had talked about Carlton testifying at defendant's trial and that Carlton wanted to testify. The court then carefully advised Carlton of his Fifth Amendment privilege against self-incrimination. The court questioned Carlton as to his understanding of the privilege; and, in waiving the privilege, Carlton indicated to the court that he understood the consequences of such a waiver. Although defendant's trial counsel had never raised the issue of conflict of interest, the court noted that it did not know whether or not a conflict of interest existed because of Ferrara's simultaneous representation of Carlton and defendant, although it appeared that there was a possibility of such a conflict. The court then asked Carlton if he had any questions he wanted to ask the court. Carlton answered in the negative; and, when asked by the court if he wanted to talk to Ferrara before testifying, Carlton answered that it was "not needed." Ferrara then asked and was permitted by the court to talk to his client. Thereafter, the jury was returned to the courtroom; and Carlton gave his testimony.
*369 At the hearing on defendant's motion for new trial, defendant presented his own testimony and that of Timothy Carlton. Carlton testified that there were pending criminal charges against him which grew out of the incident(s) which gave rise to the instant offenses, that these charges had been filed before defendant's trial, and that he had retained Ferrara as his attorney to represent him on those charges. Carlton confirmed that, at the time he testified at defendant's trial, Ferrara was representing him on the charges pending against him. Carlton acknowledged that (prior to testifying) the trial court had advised him of his constitutional rights, that he understood those rights, and that he voluntarily chose to testify.
Defendant testified at the hearing on the motion for new trial that he too had retained Ferrara as his trial counsel. Defendant stated that Carlton testified truthfully at defendant's trial, and defendant indicated that the content of the testimony he and Carlton each gave at trial was essentially the same.
In a case such as the instant one, in which the defendant did not raise the issue of a conflict of interest before or during trial, the defendant must prove that an actual conflict of interest affected his lawyer's performance. See State v. Carmouche, 508 So.2d 792, 804-805 (La.1987) (on rehearing); State v. Kahey, 436 So.2d at 484. Our review of the record fails to reveal an actual conflict of interest. Carlton made a voluntary decision to testify. He was advised of his Fifth Amendment privilege against self-incrimination and freely and voluntarily waived that privilege before testifying. A careful examination of the testimony given at trial by defendant and Carlton reveals that Carlton's testimony was favorable to defendant and entirely consistent with defendant's own testimony. The testimony given by both sought to portray each of them as entirely innocent of any criminal activity concerning the incidents which resulted in the instant offenses. Under these circumstances, in which neither defendant nor Carlton tried to shift blame to the other or implicate the other and nothing in the record suggested that an actual conflict of interest existed, defendant has failed to even establish the threshold requirement of his ineffective counsel claim, i.e., that an actual conflict of interest existed. Cf. State v. Kahey, 436 So.2d at 485-486; State v. Seay, 521 So.2d 1206, 1212 (La.App. 2nd Cir.1988). Accordingly, this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. TWO AND THREE

(assignments one and two in defendant's brief)
By means of these assignments, defendant contends that the evidence was insufficient to support the instant convictions.
Initially, we note that the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal. In order to challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La. App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984). The standard has been codified in LSA-C.Cr.P. art. 821.

SIMPLE BURGLARY
The instant bill of information originally charged defendant with aggravated burglary in violation of LSA-R.S. 14:60. *370 Thereafter, the state amended the bill of information to charge defendant with simple burglary but apparently neglected to change the citation of the statute which defendant was alleged to have violated from LSA-R.S. 14:60 (the statute relating to aggravated burglary) to LSA-R.S. 14:62, which defines simple burglary and provides punishment for this offense.
While conceding that the bill of information was amended to charge him with simple burglary, defendant argues that, because the bill of information continued to reflect a violation of LSA-R.S. 14:60, the state had to prove the elements of aggravated burglary (rather than those of simple burglary) in order to convict him of simple burglary. This argument is preposterous. Clearly, when the state amended the bill of information to charge defendant with the reduced charge of simple burglary, the state was no longer required to prove the elements of aggravated burglary. Instead, the state was required to prove the elements of simple burglary.
Furthermore, at no time did defendant express any doubt as to the nature of the charge or object to the form of the bill of information. Consequently, the record does not reflect that defendant was misled or otherwise prejudiced in any way by the state's failure to amend the bill of information to reflect that the simple burglary was a violation of LSA-R.S. 14:62 (rather than a violation of LSA-R.S. 14:60). See LSA-C.Cr.P. art. 464; State v. Jordan, 489 So.2d 994, 998 (La.App. 1st Cir.1986).
Miller testified that she had left her purse inside her car. Both she and Hendrix testified that, when they exited Hendrix's car and went around to Miller's car, they saw defendant take money from the purse and place the money in his pocket. According to Miller, there was about one hundred dollars in her purse prior to the instant offense; and, thereafter, there was only about two or three dollars in the purse. Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that defendant committed simple burglary.

AGGRAVATED BATTERY
In claiming that the evidence was insufficient to support his conviction for aggravated battery, defendant argues only that he was assaulted by the victim and that his conduct in response to that assault was justified and sanctioned by the law of self-defense.
LSA-R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
In the non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Navarre, 498 So.2d 249, 252-253 (La.App. 1st Cir.1986).
In a homicide case, the state must prove, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). However, Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case. See State v. Freeman, 427 So.2d 1161, 1163 (La.1983).[2] In previous cases dealing with this issue, this Court has analyzed the evidence under both standards of review; *371 namely, whether the defendant proved self-defense by a preponderance of the evidence or whether the state proved beyond a reasonable doubt that the defendant did not act in self-defense. See State v. Navarre, 498 So.2d at 252-253; State v. Aldridge, 450 So.2d 1057, 1059-1060 (La.App. 1st Cir. 1984).[3] Similarly, in the instant case, we need not and do not decide the issue of who has the burden of proving (or disproving) self-defense because under either standard the evidence sufficiently established that defendant did not act in self-defense.
In the instant case, the evidence reflects two conflicting versions of the incident which occurred between defendant and the victim. According to Hendrix, after he approached defendant and asked defendant what he was doing in Miller's car, defendant continued taking money out of Miller's purse. Thereafter, defendant said something, turned around, walked toward Hendrix, kicked dirt on Hendrix and hit Hendrix. According to Hendrix, he "sort of grabbed" defendant. Defendant stepped back and then "swung again." Hendrix testified that he "clutched" defendant by defendant's side and threw defendant into the ditch. Hendrix landed on top of defendant. While throwing defendant into the ditch, Hendrix observed that defendant had a knife in his hand; and, in the process of throwing defendant into the ditch, defendant cut Hendrix with the knife. Thereafter, Timothy Carlton pulled Hendrix off defendant and restrained Hendrix by holding his arms. Defendant then rose from the ditch, started toward his car, took a "big long side step," and hit Hendrix in the face with the knife, cutting him "all the way through" from approximately his earlobe to the edge of his mouth. Hendrix testified that he is 5' 5" in height and weighs one hundred forty-two pounds, that defendant is much larger than he is, and that he never hit or struck defendant during the incident.
Miller's testimony corroborated Hendrix's testimony that defendant was the aggressor. According to Miller, defendant turned to Hendrix (after throwing her purse back inside her car) and started kicking dirt on Hendrix. She testified that Hendrix continuously stepped backward and that defendant pushed Hendrix before the two of them went to the ground, rolled into the ditch, and "wrestled around." Thereafter, before running inside the bar to get help, Miller saw that one of the two men who had exited defendant's car was apparently holding Hendrix's hands.
Contrarily, according to the testimony given by defendant and defense witnesses Timothy Carlton and Mark Abels,[4] Hendrix initiated the physical encounter between himself and defendant when Hendrix approached and struck defendant from behind. According to Carlton, he did not at any time participate in the fight; and neither he nor any other occupant of defendant's car left the car during the physical encounter.
Defendant testified that when Hendrix struck him, he fell to the ground. Thereafter, he got up with his knife. He could not see because one of his eyes was bloody and the other eye had blood or water in it. Defendant could see the image of a man. He told the man he was trying to leave and to let him get to his car. The man ran straight at defendant. Defendant then swung his knife back and forth in front of himself. The man backed up and then ran back toward defendant again. Defendant then swung his knife as he had done previously. Defendant was not sure whether or not he cut the man. The man backed away. Defendant got into his car and went home.
Considering the content of Miller's testimony and that of Hendrix, it is *372 apparent that the prosecution presented evidence which, if believed, clearly proved that defendant's conduct in cutting Hendrix with a knife was not in self-defense, particularly the act of cutting the victim while the victim was being restrained by another. When there is conflicting testimony as to a factual matter, the question of credibility of the witnesses is a matter of weight of the evidence within the sound discretion of the trier of fact. See State v. Tate, 506 So.2d at 551; State v. Navarre, 498 So.2d at 253. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. State v. Johnson, 446 So.2d 1371, 1375 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984). Consequently, when all the evidence is viewed in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt that defendant's conduct was not in self-defense and that he was guilty of aggravated battery. Cf. State v. Navarre.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. FOUR

(assignment number three in defendant's brief)
By means of this assignment, defendant contends that the prohibition against double jeopardy in the Fifth Amendment to the United States Constitution and Article I, § 15, of the Louisiana Constitution was violated in this case because the same evidence was used to convict him of both of the instant offenses.
The federal and state constitutions both provide that no person shall twice be put in jeopardy of life or liberty for the same offense. U.S. Const.Amend. V; La. Const. Art. I, § 15. The double jeopardy clause protects the accused against multiple punishment for the same offense as well as a second prosecution for the same offense after acquittal or conviction. State v. Perret, 563 So.2d 459, 464 (La.App. 1st Cir. 1990).
In determining whether or not the double jeopardy prohibition has been violated, the Louisiana Supreme Court has recognized two different tests, i.e., the test established in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), and the "same evidence" test. Nevertheless, in recent years, the Louisiana Supreme Court has principally relied on the "same evidence" test when evaluating double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
The test established in Blockburger is:
... The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.... [284 U.S. at 304, 52 S.Ct. at 182].
Under the "same evidence" test, if the proof required to support a finding of guilt of one crime would also support conviction of another crime, the prohibition against double jeopardy bars a conviction for more than one crime. See State v. Knowles, 392 So.2d 651, 654 (La.1980).
In the instant case, defendant's convictions are not barred under the Blockburger test or the "same evidence" test. Defendant's conduct in making an unauthorized entry into Miller's car with the intent to commit a theft therein constituted the crime of simple burglary. See LSA-R.S. 14:62. Defendant's subsequent conduct during which he intentionally used force or violence with a dangerous weapon upon Hendrix, a second victim, constituted aggravated battery. See LSA-R.S. 14:34. Clearly, these offenses (which each required proof of completely different elements than the other) were separate and distinct offenses and not any less so merely because the second offense followed only a short time after the first. Thus, the conviction of one of these crimes did not bar a conviction for the other on grounds that defendant was twice placed in jeopardy for the same offense.
This assignment lacks merit.

*373 ASSIGNMENT OF ERROR NO. FIVE
By means of this assignment, defendant contends that the trial court erred by imposing excessive sentences.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Hawkins, 496 So.2d 643, 649 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether or not a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355, 358 (La.1980). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Hicks, 554 So.2d 1298, 1305 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374 (La.1990). The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579, 592 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
LSA-R.S. 14:34 provides that aggravated battery is punishable by imprisonment with or without hard labor for a maximum of ten years and/or a fine not to exceed five thousand dollars; and LSA-R.S. 14:62 provides that simple burglary carries a possible sentence of imprisonment with or without hard labor for a maximum of twelve years and/or a fine of not more than two thousand dollars. Herein, the trial court sentenced defendant to imprisonment at hard labor for a term of five years for the aggravated battery and a term of two years for the simple burglary. The court imposed no fine(s), but the court ordered that defendant be given credit for time served and that the sentences run consecutively.
The record reflects that defendant's appellate counsel appeared with and represented defendant at defendant's sentencing hearing.[5] At the beginning of this hearing, the trial court asked defendant and his defense counsel if they wanted to make any presentation prior to sentencing. Defense counsel's only response was that defendant wanted to make a short statement. Thereupon, defendant made a brief statement. According to defendant, "a lot of years" had elapsed since he last drank alcohol, and he does not use drugs. Defendant expressed sorrow that "this thing happened" and stated that it would not happen again. He also apologized to his family and the court for his actions.
Prior to imposing the instant sentences, the trial court noted that it had ordered a *374 presentence investigation report and that the report had been made available to defendant and his counsel. In imposing sentences, the court noted that it was assigning and filing into the record written reasons for sentencing.
In its sentencing reasons, the trial court opined that probably the most serious aggravating factor present in this case is the serious and permanently disfiguring injuries received by Frank Hendrix. In that regard, the court quoted from a letter of Hendrix in the presentence investigation report, as follows:
This man committed this crime at an age when most people have their life in order. It is plain that he is an unreformable criminal. He needs to be jailed away from society, for the benefit of society.... He showed absolutely no concern for my life when he cut my face. He could see my chest was laid open while his friends held me, but that wasn't enough for him.
I have lose [sic] of feeling in my jaw and an ugly scar from my mouth to my ear and also across my chest and one on my back. [...]
I am a young man and my sentence is for life.
Medical bills are well over $8,000.00.... I also have mental problems with this. I am shop foreman at my place of employment. It is difficult to conduct business with this on my mind.
The trial court also noted from this letter that according to Hendrix, Dawn Miller, the other victim, had a small child and was worried about the safety of this child because of the testimony Miller had given against defendant at trial.
Consistent with the content of the presentence investigation report, the trial court reviewed defendant's criminal history, noting in its sentencing reasons defendant's prior arrests for simple battery, aggravated battery, simple rape, and aggravated assault, as well as defendant's arrests and convictions for assault and assault with a deadly weapon in North Carolina. Based thereon, the trial court opined that defendant's criminal record suggests that he is the type of individual who deserves to be incarcerated; and the court stated that defendant's character and attitude, as revealed through the presentence investigation report, reveals that defendant is a violent person capable of committing crimes against the person. The court noted that defendant was fifty-three years old and that his criminal history dates back to 1957 and clearly depicts defendant as a person prone to lawlessness, violence and drunkenness. The court stated that, based primarily on defendant's criminal record, it believed the criminal conduct in the instant case was likely to recur and that defendant was not likely to respond affirmatively to probationary treatment.
In additional sentencing reasons, the trial court stated that there were no substantial grounds tending to justify or excuse defendant's conduct, that the victims did not induce or facilitate the crimes, that the court had not been informed of any compensation by defendant to either victim, and that apparently no compensation had been made to either. The court stated that it believed that imprisonment would not entail excessive hardship to defendant or his dependents, noting that defendant's statement in the presentence investigation report revealed that defendant receives Social Security payments and his wife is employed and receives a good salary. As mitigating factors, the court noted defendant's age and that, according to defendant, he suffers from a disability received during an employment-related accident. However, the court further noted that defendant appeared to the court to be in good physical condition and that defendant indicated he is an airplane pilot which further indicated to the court that defendant must be generally in good health. Noting that the aggravating factors in this case greatly outweighed the mitigating factors, the court concluded that the sentences it was imposing were completely warranted. The court further noted that it believed there was an undue risk that during a period of suspended sentence or probation defendant would commit another crime, that defendant is in need of correctional treatment or *375 a custodial environment which can be provided most effectively by his commitment to an institution, and that any lesser sentences than those imposed would deprecate the seriousness of the crimes.
Contrary to defendant's assertions in brief, the record does not reflect any reliance on or even any reference by the trial court in its sentencing reasons to factual circumstances of other offenses for which defendant had previously been arrested. Instead, the court noted only the fact of defendant's prior arrests for particular crimes. Prior criminal activity is one of the factors which may be considered by a sentencing court and it is not limited to criminal convictions. State v. Washington, 414 So.2d 313, 315 (La.1982); State v. Brown, 410 So.2d 1043, 1044-45 (La.1982).
Contrary to defendant's argument in brief that he was not afforded an opportunity to contest or rebut the statements the trial court quoted from Hendrix's letter, the record does not reflect, nor does defendant contend, that any request was ever made to the trial court to rebut that information or any other information contained in the presentence investigation report. Moreover, as previously mentioned, at the beginning of the sentencing hearing, defendant and defense counsel were given the opportunity to make presentations to the court. Under these circumstances, we conclude that defendant waived the opportunity to rebut any information in the presentence investigation report. See State v. Washington, 414 So.2d at 316. State v. Tate, 506 So.2d at 553.
In this case, we are unable to say that the trial court abused its discretion in imposing these consecutive sentences upon a defendant whose past conduct and repeated criminality over an extended period of time posed an unusual risk to the public. Accordingly, this assignment is meritless.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Initially, defendant was charged in bill of information number 3363 with the attempted first degree murder of Hendrix, a violation of LSA-R.S. 14:27 and 30, and in bill of information number 3383 with the aggravated burglary of Miller's car, a violation of LSA-R.S. 14:60. Thereafter, the state amended these charges by amending bill of information number 3383 to charge defendant with the instant offenses.
[2] In Freeman, the Louisiana Supreme Court indicated, in dicta, that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence. 427 So.2d at 1163. Several cases decided thereafter have followed that view. See State v. Perkins, 527 So.2d 48, 50 (La.App. 3rd Cir. 1988); State v. Mason, 499 So.2d 551, 555 (La.App. 2nd Cir.1986); State v. Barnes, 491 So.2d 42, 47 (La.App. 5th Cir.1986).
[3] Other courts have also utilized this approach and analyzed the evidence under both standards. See State v. Martin, 520 So.2d 1079, 1080 (La.App. 3rd Cir.1987); State v. Agnelly, 515 So.2d 821, 823 (La.App. 5th Cir.1987); State v. Zeno, 469 So.2d 337, 340 (La.App. 2nd Cir.), writ denied, 474 So.2d 1303 (La.1985).
[4] According to the testimony given by defendant and Timothy Carlton, the only occupants of defendant's car were Mark Abels, Darryl Robinson (who did not testify at trial), Timothy Carlton and defendant.
[5] The record reflects that on March 2, 1990, approximately three and one-half months before defendant's sentencing, the trial court signed a judgment relieving Frank Ferrara (defendant's trial counsel) as defendant's attorney of record and enrolling Ernest M. Forbes (defendant's appellate counsel) as attorney of record for defendant.