754 So.2d 991 (1999)
STATE of Louisiana
v.
Eric D. WALLACE.
No. 98 KA 2450.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*993 Doug Moreau, District Attorney by Stephen Pugh, John A. Cannon, Assistant District Attorneys, for State of Louisiana.
Katherine M. Franks, Baton Rouge, for Defendant/Appellant, Eric D. Wallace.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
The defendant, Eric D. Wallace, was charged by bill of information with one count of possession of a firearm in a firearm-free zone, a violation of LSA-R.S. 14:95.2. He pled not guilty. Following a bench trial, he was found guilty as charged. He was sentenced to two years at hard labor, credit for time served, with the remainder of the sentence suspended, subject to certain general and special conditions of probation. He moved for reconsideration of sentence, but the motion was denied. He now appeals, designating three assignments of error.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant contends the evidence was insufficient to negate his defense of self-defense.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).
LSA-R.S. 14:95.2, in pertinent part, provides:
A. Carrying a firearm, or dangerous weapon as defined in R.S. 14:2, by a student or nonstudent on school property, at a school sponsored function, or in a firearm-free zone is unlawful and shall be defined as possession of any firearm or dangerous weapon, on one's person, at any time while on a school campus, on school transportation, or at any school sponsored function in a specific designated area including but not limited to athletic competitions, dances, parties, or any extracurricular activities, or within one thousand feet of any school campus.
B. For purposes of this Section, the following words have the following meanings:
(1) "School" means any elementary, secondary, high school, vocational-technical school, college, or university in this state.
(2) "Campus" means all facilities and property within the boundary of the school property.
* * * * * *
(4) "Nonstudent" means any person not registered and enrolled in that school ....
LSA-R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
*994 In the non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Willis, 591 So.2d 365, 370 (La.App. 1st Cir.1991), writ denied, 594 So.2d 1316 (La.1992).
In a homicide case, the state must prove, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. However, Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case. In previous cases dealing with this issue, this court has analyzed the evidence under both standards of review; namely, whether the defendant proved self-defense by a preponderance of the evidence or whether the state proved beyond a reasonable doubt that the defendant did not act in self-defense. Similarly, in the instant case, we need not and do not decide the issue of who has the burden of proving (or disproving) self-defense because under either standard the evidence sufficiently established the defendant did not act in self-defense. State v. Willis, 591 So.2d at 370-71.
At trial the defendant, who was twenty-three years old at the time of the offense, conceded he had retrieved his handgun from his vehicle at Glasgow Middle School, held it, and told approaching children "to back off." Defendant claimed he was "scared," but that the gun was unloaded. However, he conceded the weapon was loaded when it was recovered from his vehicle the day after the incident.
According to the defendant, he had gone to the school to pick-up his sister-in-law, Mary Ann Ricks, between 2:20 p.m. and 2:30 p.m. He saw Ricks running towards the office. He also saw two "guys[]" standing in front of the gym. He was not afraid of the "guys." As he approached Ricks, one of the guys, whom he claimed he only later learned was "Kenny," began cursing and yelling at him. Kenny told the defendant to get out of his car, and the defendant did so, "[t]o find out why he was cursing and yelling." The "other guy" walked to the gym to get "the other four or five guys." Then "everybody just come charging, running out the gymnasium toward the car." The defendant described two of the "guys" as looking "older and didn't look like they belong at the school." The other three "guys" were "small, looked like seventh or eighth graders." The defendant claimed that he was scared, so he grabbed his gun from under his car seat and told the "guys" to back off, without pointing the gun at anyone. The "guys" backed off because the principal and Ricks came out. When asked why he did not leave when he got scared, the defendant claimed that he had gone to the school to pick-up Ricks and was unaware of her whereabouts when the incident occurred.
On cross-examination, the defendant acknowledged that prior to the incident, he had been "upset" with Kenny because Kenny had called the defendant's house wanting to speak with Ricks. When asked where the "six or seven guys" went when the teachers came out, the defendant stated, "[t]o my knowledge, everybody was out there the whole time."
However, Glasgow Middle School teacher Sonya Ragusa testified that when she came out of the gym with Kenny's brother, Marcus, Kenny was standing by himself near the defendant. The only other people around were a few children waiting for their rides near the "gate in the back." Ragusa described how she had been in the gym when someone told her that a student "was going to be shot." Ragusa immediately exited the gym and saw the defendant walking around a car with a gun in his hand speaking to Kenny. When the defendant saw Ragusa, he went back around the car and placed the gun under the seat. When asked whether the defendant appeared to be in a confrontation with any other person or student, Ragusa *995 answered, "[o]nly he and Kenny when I was out there." Kenny was in the eighth grade and was a "true" eighth grader.
On re-direct examination, the defendant denied knowing who Kenny was at the time of the incident. However, Glasgow Middle School's then assistant principal, Jesse LeBlanc, testified that when he spoke to the defendant immediately after the incident, the defendant told him: he (the defendant) "had problems" with Kenny because Kenny had been calling his house; he had gotten into a verbal confrontation with Kenny on the telephone; he was upset about the verbal confrontation; and he had wanted to "settle" the confrontation. LeBlanc had come to the scene after a student reported that someone had a gun outside, and he was worried that someone would be hurt. After questioning the defendant about why he was at the school, LeBlanc asked the defendant whether he had a weapon. The defendant admitted that he had a weapon. LeBlanc asked for the weapon, but the defendant told him that it was in the car "and it would be okay there." LeBlanc advised the defendant that it was against state law to have a weapon on a school campus and that he had to leave because he (LeBlanc) did not want anyone to be injured. The defendant left the school, and LeBlanc advised authorities of the incident. LeBlanc became concerned that the defendant's "problem" with Kenny might continue to the next day, so he asked a sheriff's deputy to come to the school for the beginning and end of the next school day.
LeBlanc testified that Glasgow Middle School was a public school, grades six through eight, with student age ranges between eleven and fifteen. He also testified that notice of the illegality of bringing firearms within a certain distance of a school campus was posted at the entry to the school.
The day after the incident, after Deputy Flitter was at the school, the defendant returned. LeBlanc identified the defendant and his vehicle for Deputy Flitter, and Deputy Flitter told the defendant to park his vehicle.
East Baton Rouge Sheriff's Office Deputy Douglas Flitter corroborated LeBlanc's testimony and added that he approached the defendant's vehicle, asked him to step out, and advised him of his Miranda rights. Deputy Flitter offered the defendant no inducements or promises in exchange for cooperation or a statement. Nor did the Deputy threaten the defendant. In response to Deputy Flitter's questioning, the defendant revealed that he did own a weapon and that it was under the vehicle's front seat. The defendant attempted to reach for the weapon, but Deputy Flitter asked him not to do so. In response to the Deputy's request, the defendant granted the Deputy permission to retrieve the weapon. Deputy Flitter identified S-1 in globo as the weapon he recovered from the defendant's vehicle, more particularly, a Larsen .38 semi-automatic, a "clip," and five bullets.[1] At the time Deputy Flitter recovered the weapon, the "clip" was in the weapon, and the "clip" was loaded.
Deputy Flitter also testified that, after questioning the defendant, he learned that the weapon belonged to the defendant, who was on the school campus the prior day with it. The defendant had taken it out of his car and brandished it in an altercation with some other students at the school. Deputy Flitter learned that the argument stemmed from problems the defendant had with a student who had been calling his home wanting to speak with his sister-in-law.
In finding the defendant guilty as charged, the fact finder obviously accepted the testimony of the state's witnesses and rejected the testimony of the defendant. The testimony at trial established each and every element of the offense of possession of a firearm in a firearm-free zone. Further, *996 that testimony, if believed, established that the defendant's actions were not justifiable.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0322, p. 33 (La.App. 1st Cir.4/7/95); 653 So.2d 1288, 1310, writ denied, 95-1153 (La.10/6/95); 661 So.2d 464.
After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of possession of a firearm in a firearm-free zone and that such possession was not justifiable. Resort to a .38 semi-automatic pistol to "settle" a conflict with an unarmed eighth grade child is not reasonable. Accordingly, this assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number 2, the defendant contends the sentence imposed upon him by the trial court was unconstitutionally excessive and not supported by the articulated reasons for sentence.
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Whoever commits the crime of carrying a firearm by a student or nonstudent on school property or in a firearm-free zone shall be imprisoned at hard labor for not more than five years. LSA-R.S. 14:95.2 D. The defendant was sentenced to two years at hard labor, credit for time served, with the remainder of the sentence suspended, and two years of active supervised probation subject to: his paying a $20 per month supervision fee; his enrolling and completing the court effective decision making skills class; his providing proof of completion of the class to his probation officer; his reporting to the Baton Rouge Substance Abuse Clinic for evaluation; his complying with the recommendations of the clinic; his refraining from all criminal conduct; his not being arrested for any other offense; his maintaining full-time gainful employment; his performing fifty hours of community service through a public agency; and his paying court costs of $171.50.
In sentencing the defendant, the trial court stated:
Mr. Wallace, the thing that I guess stands out most in the Court's mind about your case is that you don't seem to recognize that you showed poor judgment *997 in this case. According to your comments that you made to probation and parole you still believe that you were justified in responding to the situation the way that you did. That makes me question your maturity and your judgment. There are very few situations where people need to resort to pulling a weapon. And when you talk in the context of an incident happening on school campus, a middle school campus, you know, that is not something that one would expect a mature reasonable adult to do is to inject a weapon in a situation involving a dispute with middle school students. And it suggests to the Court that there is some impaired judgment on your part in not recognizing that that was not the best way to handle that situation. The probation office recommends probation for you. They believe that you are amenable to supervision and the Court will accept that recommendation.
When the defendant pulled out his gun, Kenny was obviously threatened because he raised his hands over his head. Kenny's brother, stating, "you can't shoot my brother," had to be forcefully restrained by Ms. Ragusa to prevent his confronting the armed defendant. Had Ms. Ragusa not acted so commendably, a situation of defendants' poor judgment may have turned tragic. Even assuming the defendant's weapon was unloaded when he brandished it, at the very least, he created a highly charged atmosphere conducive to violence. Danger invites rescue, but also invites self-help. See State v. Sterling, 453 So.2d 625, 630 (La.App. 1st Cir.1984).
A thorough review of the record reveals no manifest abuse of discretion in the trial court's imposition of sentence herein. The defendant was sentenced to less than half the statutory maximum. Further, the trial court suspended whatever part of the sentence remained after credit for time served. The sentence was not grossly disproportionate to the severity of the offense. Therefore, the sentence was not unconstitutionally excessive. Accordingly, this assignment of error is without merit.

ADVICE OF PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF
In assignment of error number 3, the defendant contends patent error occurred when the trial judge failed to advise him when the prescriptive period for filing for post-conviction relief commenced.
The record reflects that after imposing sentence, the trial court advised the defendant of the prescriptive period for filing for post-conviction relief as follows: "you have three years to seek post-conviction relief."
LSA-C.Cr.P. art. 930.8, in pertinent part, actually provides:
A. No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than three years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
. . . . .
(Emphasis added).
However, the trial court's failure to properly advise the defendant of the delay under LSA-C.Cr.P. art. 930.8 A has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. The trial court hereby is directed to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received notice. See State v. Wright, 98-0601, p. 20 (La.App. 1st Cir.2/19/99); 730 So.2d 485, 496.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] During the testimony of a subsequent witness concerning S-1 in globo, the defense stipulated "that that was the gun[,]" and the exhibit was introduced without objection.