STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 KA 0467

STATE OF LOUISIANA

VERSUS

PATRICIA M. CURRIE

JUDGMENT RENDERED: **FEB 2 2 2021**

* * * * * * *

Appealed from
The Twenty-Second Judicial District Court
In and for the Parish of St. Tammany • State of Louisiana
Docket Number 582421 • Division H

The Honorable Alan A. Zaunbrecher, Judge Presiding

* * * * * * *

Jane L. Beebe                                   ATTORNEY FOR APPELLANT
*Louisiana Appellate Project*                   DEFENDANT—Patricia M. Currie
Addis, Louisiana


Warren L. Montgomery                            ATTORNEYS FOR APPELLEE
*District Attorney*                             State of Louisiana
Matthew Caplan
*Assistant District Attorney*
Covington, Louisiana


* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WELCH, J.**

The State of Louisiana charged the defendant, Patricia M. Currie, by bill of information with attempted second degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1.[1] The defendant pled not guilty. Following a jury trial, the jury found the defendant guilty as charged by unanimous verdict. The defendant moved for a new trial, which the district court denied. The district court sentenced the defendant to twenty-two years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant moved for reconsideration of sentence, which the district court denied. The defendant now appeals, challenging the evidence as insufficient and her sentence as excessive. For the following reasons, we affirm the defendant's conviction and sentence.

## FACTS

The victim, Keith Couture, a criminal defense attorney in Madisonville, Louisiana, represented the defendant in a bankruptcy matter involving her condominium and debts owed to a homeowner's association in 2012. Under the bankruptcy, the defendant was obligated to a five-year repayment plan.

In 2016, the defendant was scheduled to receive approximately $1,000.00 pursuant to a settlement in a personal injury lawsuit she had filed against the homeowner's association. Mr. Couture prepared a motion in the bankruptcy matter to allow the funds to go to the defendant for car repairs and dental expenses, rather than to her creditors in the bankruptcy matter. The main creditor in the bankruptcy matter was the homeowner's association.

Following a hearing, the bankruptcy court refused to allow the defendant to use the settlement funds for car repairs and dental expenses. Mr. Couture was not present at the hearing due to his presence in another court, but he moved the court to

---

[1] The State entered a *nolle prosequi* to an additional charge of possession of a Schedule IV controlled dangerous substance, a violation of La. R.S. 40:969(C), after the defendant produced a prescription for the substance.

2

reconsider its ruling. Subsequently, Mr. Couture and the defendant disagreed about what to file in connection with the memorandum in support of the motion for reconsideration. After Mr. Couture refused to file what he considered irrelevant documentation, the defendant filed a supplemental, *pro se* memorandum, which included the documentation. Additionally, the defendant refused to settle with the homeowner's association because she claimed it owed her money "for the past [twenty] years."

Mr. Couture told the defendant that due to her refusal to take his advice and her refusal to negotiate with the homeowner's association, he was going to withdraw from representing her in the bankruptcy matter. Mr. Couture moved to withdraw prior to the hearing on the motion for reconsideration, which was set for October 25, 2016. Mr. Couture notified the bankruptcy court and the defendant that he would not be present at the hearing. The defendant argued her position at the hearing *pro se*; the judge denied the motion for reconsideration.

On October 27, 2016, at approximately 3:00 p.m., Mr. Couture was alone in his office because his secretary and the other attorney with whom he shared the office routinely left at 2:00 p.m. and 2:30 p.m., respectively. The defendant was familiar with Mr. Couture's office and knew his secretary and everyone that worked there. Mr. Couture heard a noise "from the front." He saw the front door was open. He approached the front of his office and saw the defendant sitting in a chair in the reception area with a towel in her lap. The defendant had plastic bags on her hands and feet. Mr. Couture asked, "[w]hat are you doing here, Ms. Currie?" The defendant began to lift a .410 bore shotgun from under the towel and stated, "I'm here to kill you." The defendant pointed the weapon at Mr. Couture's chest; he grabbed the weapon by the barrel to push it away. The defendant refused to let go of the weapon, and Mr. Couture put his elbow "in her chest or on her shoulder" to force her to release the weapon. Mr. Couture then banged on his neighbor's door and told

3

him, "[t]his lady just tried to kill me." Mr. Couture subsequently saw the defendant removing the plastic bags from her hands and feet and putting them in the trash can.

Mr. Couture has a heart condition and, during the ordeal, his blood pressure was "through the roof." After the police arrived, he learned that the shotgun was loaded. He also learned that the defendant had "additional ammunition on her[.]"

Prior to arriving at Mr. Couture's office, the defendant parked her vehicle suspiciously at the office of attorney Rykert Toledano in Covington, Louisiana. The defendant's car was not in a parking spot, and trees and bushes obscured the rear of her vehicle. The defendant was wearing blue latex gloves. She falsely claimed to have an appointment with Mr. Toledano. When his office informed the defendant that Mr. Tolendano would not be back until Monday, she stated, "I'll wait," even though it was only Thursday. She drove away after Mr. Toledano's partner told her he had called the sheriff's office.

The defendant denied that she went to Mr. Couture's office to shoot and kill him. Rather, she claimed she only intended to "scare him" and "really make him pay attention to [her] this time" because she was getting "madder and madder" at the way Mr. Couture was "handling things." The defendant stated she initially liked Mr. Couture, but that their relationship deteriorated because he "was not going to hearings" and because of his handling of the motion for reconsideration.

The defendant stated she carried her shotgun in her car "for protection," but probably kept the weapon unloaded "because some child could get in the car." She claimed she loaded her shotgun on the day of the incident "to scare [Mr. Couture] with it." She conceded, however, that only a very small portion of the shotgun shell was visible when it was chambered inside the weapon. She claimed she told herself, "I will not cock [the shotgun] because it's dangerous[,] and I surely don't want to hurt him or anybody else." She denied that she attempted to pull the trigger on the weapon or even had her finger on the trigger. The defendant claimed she covered her

4

hands and feet with plastic bags "to just show [Mr. Couture] that [she] was...freakish with the whole thing" and to "cover [her] tracks[.]" The defendant did not know why she covered the shotgun with a towel when she was inside Mr. Couture's office, but conceded she covered the weapon when she approached the office "so that nobody would see the gun." The defendant claimed Mr. Couture was lying about her pointing the shotgun at his chest, about having to wrestle the weapon away from her, and about her stating, "I'm here to kill you."

## SUFFICIENCY OF THE EVIDENCE

In her first assignment of error, the defendant contends the district court erred in denying her motion for new trial and finding that the evidence was sufficient to support the jury's verdict of attempted second degree murder. She argues the offense was a "classic example" of an aggravated assault with a firearm, rather than an attempted second degree murder. The defendant claims she "merely removed the towel covering the [shotgun] and began to stand saying she was going to kill Mr. Couture." She further claims "[o]ther than the threat and performance of that threat[,] there was no act in furtherance to warrant the jury's conclusion that this was an attempt[ed] second degree murder."

The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438; **State v. Jones**, 2008-1929 (La. App. 1st Cir. 3/27/09), 2009 WL 839140, *4 (unpublished), writ denied, 2009-0942 (La. 1/22/10), 25 So. 3d 139.

5

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. La. R.S. 15:438. See also **Jones**, 2009 WL 839140 at *4.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Further, a specific intent to kill is an essential element of the crime of attempted murder. **Jones**, 2009 WL 839140 at *4.

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A). Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended. La. R.S. 14:27(B)(1). Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); **State v. Henderson**, 99-1945 (La. App. 1st Cir. 6/23/00), 762 So. 2d 747, 751, writ denied, 2000-2223 (La. 6/15/01), 793 So. 2d 1235. Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such

6

as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **Jones**, 2009 WL 839140 at *4.

Whether or not the defendant's criminal conduct also constituted the offense of aggravated assault with a firearm is irrelevant to our review of the sufficiency of the evidence to support the verdict returned in this matter, *i.e.*, attempted second degree murder. The district attorney's authority over criminal prosecutions in his district is well established. See La. Const. art. V, § 26(B); La. C.Cr.P. art. 61. He has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when, and how he shall prosecute. La. C.Cr.P. art. 61; **State v. Papizan**, 2017-0028 (La. App. 1ˢᵗ Cir. 11/2/17), 256 So. 3d 1091, 1095, writ denied, 2017-2028 (La. 10/29/18), 255 So. 3d 572. Prosecution may proceed under either provision, in the discretion of the district attorney, whenever an offender's conduct is criminal according to an article of the Louisiana Criminal Code (Louisiana Revised Statutes Title 14, Chapter 1), or section of the Louisiana Criminal Code, and also some other provision of the Revised Statutes, some special statute, or some constitutional provision. La. R.S. 14:4(2). See **State v. Walker**, 2000-0334 (La. App. 1ˢᵗ Cir. 12/22/00), 775 So. 2d 663, 666, writ denied, 2001-0235 (La. 12/7/01), 803 So. 2d 23 ("Even when the penalty under a general criminal provision differs from that established in a special provision, the district attorney has the discretion to proceed under either provision.").

Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could have found the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted second degree murder and the defendant's identity as the perpetrator of that offense against the victim. Although the defendant gave a contrary account of the incident, Mr. Couture testified the defendant pointed a

7

shotgun at his chest and stated, "I'm here to kill you." The verdict returned in this matter reflects that the jury found the testimony of the victim credible, while rejecting the testimony of the defendant. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **Jones**, 2009 WL 839140 at *5.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 662. The defendant's specific intent to kill Mr. Couture was proven by direct evidence, specifically, the defendant's statement that she was in Mr. Couture's office "to kill [Mr. Couture]." Further, the defendant's lying in wait with a dangerous weapon with the intent to commit a crime was, in and of itself, sufficient to constitute an attempt to commit the offense intended. See La. R.S. 14:27(B)(1); **State v. Kalathakis**, 563 So. 2d 228, 229 n.1 (La. 1990) ("[d]efendant's conviction for the attempted manslaughter of Deputy Daughtery was based on defendant's lying in wait behind the bedroom door with a loaded pistol, knowing that police had entered the building, with the intent to use the gun to prevent police officers from entering the bedroom. On this evidence a rational juror could have concluded beyond a reasonable doubt that defendant lay in wait with a dangerous weapon with the intent to kill a police officer.").

Additionally, the defendant performed numerous additional acts for the purpose of and tending directly toward the accomplishing of her object. She loaded her shotgun, drove to Mr. Couture's office, covered her hands and feet with plastic bags, entered Mr. Couture's office while concealing her shotgun under a towel, and

8

then pointed the weapon at Mr. Couture's chest. Although the defendant claimed she covered her hands and feet with plastic bags merely to scare Mr. Couture, the fact remains this action would have concealed or eliminated the presence of her fingerprints and footprints at the scene and would have concealed or eliminated gunshot residue on her hands. Most significantly, the defendant pointed the loaded shotgun at Mr. Couture's chest. The jury was not irrational in finding that this action was certainly an act in furtherance of killing him. Indeed, the fact that Mr. Couture had to forcefully take the shotgun away from the defendant was circumstantial evidence that she intended to do more with the weapon than scare him. For the foregoing reasons, the defendant's first assignment of error is without merit.

## EXCESSIVE SENTENCE

In her second assignment of error, the defendant contends the district court imposed an excessive sentence in this matter because she was a seventy-nine-year-old woman with no criminal history.

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless imposition of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A district court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. **State v. Eason**, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So. 3d 61, 73.

The Louisiana Code of Criminal Procedure sets forth items that must be considered by the district court before imposing sentence. See La. C.Cr.P. art. 894.1.

9

The district court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the district court's stated reasons and factual basis for its sentencing decision. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. **Eason**, 293 So. 3d at 73.

As applicable here, the penalty for attempted second degree murder is imprisonment at hard labor for not less than ten years nor more than fifty years without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27(D)(1)(a) & 14:30.1(B). The defendant was sentenced to twenty-two years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.

Mr. Couture testified at the sentencing hearing. He stated the defendant had never offered any type of apology or accepted any type of responsibility for the offense. He indicated the defendant swore to tell the truth at trial, but then lied to the jury. Mr. Couture testified, "[the defendant is] a violent individual, and it will never, ever, ever go out of my mind what happened."

Rhonda Couture, Mr. Couture's wife, also testified at the sentencing hearing. She stated the offense had changed her life and her family. Following the incident, "for months," she and Mr. Couture would wake up in the middle of the night. She indicated when Mr. Couture came home after the incident, "he had bruises from here to here from banging on the office next door's door to save his life from [the defendant]." Mrs. Couture stated the defendant had "no remorse, no nothing," but that Mr. Couture and his family had been "put through hell for three years worried that [the defendant] was going to get out of jail and that [Mrs. Couture] was going to run into her in Wal-Mart or anywhere." Mrs. Couture concluded:

> I would like [the defendant] to spend the rest of her life
> that is what according to the law or whatever the law says
> that she needs to spend in jail, because I never want her
> to do this to anybody else or my family ever again. And
> I am scared if she gets out what would happen. We live
> five miles away from each other.

Debbie Eskan also testified at the sentencing hearing. Approximately thirty-six or thirty-seven years earlier, after Mrs. Eskan's husband visited her at her apartment after they were separated, the defendant threatened to kill Mrs. Eskan and "cut [her] up in little bits and pieces."

Jesse Wimberly, IV, also testified at the sentencing hearing. He had represented the homeowner's association in legal matters to recover homeowner's dues from the defendant. During that representation, the defendant's daughter telephoned Mr. Wimberly to warn him that the defendant had threatened to kill him. The defendant's daughter warned Mr. Wimberly because she thought "[the defendant] could do it and would do it."

Trey Lape also testified at the sentencing hearing. In 2012, Mr. Lape obtained a judgment for the homeowner's association against the defendant and pursued legal process for the seizure and sale of the defendant's condominium. Thereafter, while he was working at his office, he heard what he believed to be a gunshot and saw a vehicle fitting the description of the defendant's vehicle outside.

In sentencing the defendant, the district court noted it had reviewed the factors under La. C.Cr.P. art. 894.1 and found the presence of the following aggravating factors: (1) the defendant used threats or actual violence in the commission of the offense; (2) the defendant used a dangerous weapon in the commission of the offense; (3) the defendant's "lack of candor with the [c]ourt, lack of truthfulness with the [c]ourt was significant"; and (4) the defendant had shown no remorse whatsoever. In regard to mitigating factors, the court noted the defendant had no prior criminal convictions in any way related or evidencing a

capability of or likelihood to commit the offense. Additionally, the court stated it had considered the general goals of sentencing, *i.e.*, punishment, deterrence, incapacitation, and rehabilitation.

A thorough review of the record reveals the district court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. See La. C.Cr.P. art. 894.1(B)(6), (B)(10), (B)(21) & (B)(28). Further, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive. The defendant created a highly charged atmosphere conducive to violence. Danger invites rescue, but also invites self-help. See **State v. Wallace**, 98-2450 (La. App. 1st Cir. 9/24/99), 754 So. 2d 991, 997. For these reasons, the defendant's second assignment of error is without merit.

## DECREE

Based on the foregoing, we affirm the defendant's conviction and sentence.

**CONVICTION AND SENTENCE AFFIRMED.**

12